By the Court.—Freedman, J.
This action was brought by the devisee of a lessor, against the assignees of the lessee to recover for rent and taxes. During its pendency the devisee died, and the action was continued, first by her temporary administrator, and afterwards by the present plaintiffs as her executors.
The defendants defended as to the taxes for 1879, and the quarter’s ground-rent due November 1, 1879. As to these items, they alleged that before the same became due, they had assigned the lease. They also interposed counter-claims for one-half the value of the building, and the value of the elevator, engine and boiler, on the theory that they had subsequently taken a re-as-. signment of the lease.
The court below dismissed the counter-claims, and gave judgment for the plaintiffs for the full amount claimed.
Afterwards, the plaintiffs consented, that the disputed items of plaintiffs’ claim be stricken out, and an *438 order was entered, amending and reducing the judgment accordingly.
The right of the defendants to recover half the value of the building, was passed upon and denied by the general term of this court, in the case of Johnston against these same defendants (48 N. Y. Superior Ct. 180).
The only question, therefore, to be determined upon the present appeal, is as to the correctness of the decision of the court below, dismissing the counterclaim for the value of the alleged personal property. The action being on contract, viz.-, for rent and taxes, the counter-claim is not available as such, if founded on an independent tort. From the manner in which it was pleaded, it is not clear, that the pleader intended to rest it on such a foundation. It is alleged, that the plaintiffs’ testatrix took possession, and detained the said personal property, but it is not alleged, either in terms or by implication, nor can the legal inference be drawn from the language used, that the taking of possession or the detention was wrongful. ¡Nor were any damages demanded. The allegation is, in substance, that the plaintiffs’ testatrix took the-property, detained it, and agreed to pay its reasonable value, but failed to do so. The question of pleading must therefore be determined, in favor of the availability of the counter-claim as one on contract.
The evidence, however, given at the trial, showed that in fact there was no agreement to pay,' and consequently the defendants were, and are left to rely on an implied promise.
The question then arises, whether such an implication results as matter of law from the facts of the case, and if it does, whether it results in such a way that under our system of practice it can constitute the basis of a counter-claim, to the cause of action set forth in the complaint.
*439 The facts are substantially as follows : in November, 1866, Charles W. Jewell, the owner of the lots of ground, known as Nos. 109 and 111 West Broadway, in the city of New York, leased the same to one David C. Sturges, for the term of twenty-one years at the rent of $3,000 per annum, and the lessee to pay the taxes. The lessee also covenanted to erect upon the demised premises, a first-class commercial building, not less than five stories high, and to cost not less than $30,000. At the expiration of the said term, the building was to be appraised, and was to belong to the lessor upon payment of one-half of the appraised value; or, the lessor might give a new lease at an appraised rental, and at the expiration of the second term, the building should belong to the lessor.
By lease bearing even date, and containing precisely the same covenants and provisions,the lots Nos. 3, 5 and 7 White street, belonging to Messrs. Johnston, and forming an L with Mr. Jewell’s lots, were also leased to Mr. Sturges.
Thereafter one Walter Jones became the assignee of said leases, and entered into possession. As such, he erected on the premises a building of the character called for, which was accepted by the lessors, as a performance of the covénant on the part of the lessee to build. The building is six stories high, and covers the five lots. It was planned for, and provided with, an elevator and steam-heating apparatus, and an engine to run the elevator, and a boiler to supply the engine and the heating pipes. These appliances were in the building at the time it was accepted by the lessors, and have always remained there, and have always been used by the various sub-tenants who occupied the building. They are substantially attached to it, and cannot be removed without considerable injury. First-class commercial buildings in the city of New York,- of the size and character of the building referred to, are *440 oftener supplied, than not supplied, with a steam elevator and a steam heating apparatus.
In 1871, after the completion of the building, Jones mortgaged the leases, and leasehold premises, and his interest in the building to the defendants, who after-wards foreclosed, bought in, and entered into possession. The elevator, engine and boiler, were not mentioned in the mortgage, and consequently, the defendants only obtained them upon the theory that they were part of the building.
On October 10, 1871, Charles W. Jewell died, and by Ms will, devised the lot No. Ill West Broadway, being the northerly half of the premises described in his lease to Sturges, to Selena H. Jewell, the plaintiffs’ testatrix.
In December, 1879, Mrs. Jewell, in conjunction with the owner of the lot No. 109 West Broadway, took possession of the demised premises, by virtue of a warrant, duly issued under the statute relative to summary proceedings to recover the possession of lands ; but they did not disturb the actual occupancy of the sub-tenants. From them, they merely took leases to themselves. So far as the elevator, engine, boiler and heating apparatus stood upon the premises thus recovered, they were also taken possession of. But from the mere taking of these, articles,. under the circumstances they were taken, the law does not imply a promise on the part of Mrs. Jewell, to pay their reasonable value.
Only a portion of the said articles were on her premises. If she converted them, she did it jointly with the other owner, and any implied promise growing out of the conversion, would be-a joint promise of both.
In so far, therefore, as the defendants’ counterclaim is based upon an implied, contract to pay, it cannot be maintained in this action, because it rests on a *441 joint cause of action, against Mrs. Jewell and another person, not a party to the action.
It is only as a tort-feasor, that she could be proceeded against separately. But, in that case, the defendants would have to rely and proceed on the tort, and that, again, they cannot do in this action.
Moreover, the evidence does not even show she was a tort-feasor. It can hardly be controverted, though it is not necessary so to decide, that the said appliances were designed and always considered, by all parties, to be parts of the building, and that, if the defendants had chosen to perform the covenants of the lease, they would have been entitled at the end of the term, to be paid for them as parts of the building. It is not the usual case, therefore, between landlord and tenant, where the tenant hires a building, and puts in machinery for the purposes of a personal business carried on by him, without being -under obligation to the landlord so to do. But, even upon the assumption that the defendants can maintain that, as between the parties to this action, the said appliances did not constitute parts of the building, it does not follow, that the mere taking possession of them, by Mrs. Jewell with the building, in itself amounted to a wrong. She has not disposed of them. She left them in the positions they always occupied, and thus allowed the sub-tenants of the defendants, who were in actual possession of parts of the building, and who must be presumed to have had the right of possession, as against the defendants, to have the benefit of their use. At any rate, as the defendants had theretofore considered and treated these appliances as parts of the building, Mrs. Jewell was justified in acting upon the same assumption, and it was incumbent upon the defendants to notify her of their mistake, if a mistake it was, and demand a return of the property, before they could treat her as a tort-feasor. This they did not do.
*442 In every aspect that can be taken, therefore, the counter-claim under examination cannot be maintained in this action.'
The judgment should be affirmed, with costs.
Russell, J., concurred.